# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 51314

In the Matter of the Guardianship and
Conservationship of:  Jane Doe,
A Minor Child.

ROBERT TIMOTHY MURRAY and
TEENA MARIE MURRAY, husband and wife,

    Petitioners-Counterdefendants-
    Respondents

v.

ALAYNA A. DALTON, biological Mother of
Minor Child,

    Respondent-Counterclaimant-
    Appellant.

Boise, April 2024 Term

Opinion filed: November 7, 2024

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Cassia County. Blaine Cannon, Magistrate Judge.

Order Denying Petition for Termination of Guardianship is <u>affirmed</u>.

Echo Hawk & Olsen, PLLC, Pocatello, for Appellant. Joseph T. Preston submitted arguments on the briefs.

May, Rammell & Wells, CHTD, Pocatello, for Respondent. Peter M. Wells submitted arguments on the briefs.

---

BEVAN, Chief Justice.

This appeal concerns an attempt by Alayna A. Dalton to terminate a guardianship over her seventeen-year-old child, Jane Doe ("Jane"). The magistrate court appointed Tenna and Tim Murray, Alayna's mother and stepfather, as temporary guardians of Jane and later made the guardianship permanent. Alayna argues that several of Idaho's guardianship laws unconstitutionally infringe on the fundamental rights of parents and that the lower court's decision was not based on substantial evidence of her unfitness as a parent. Alayna also argues that the

1

lower court should have terminated the guardianship because the Murrays' alienating behavior is adversely impacting Jane's welfare and the parent-child relationship. Alayna asks this Court to reverse the decision of the magistrate court denying her petition to terminate the guardianship. For the reasons below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Jane will turn eighteen in November 2024. Jane is the daughter of Alayna Dalton and Richard Clouser[1]. Jane has a strong, loving relationship with her maternal grandmother, Teena Murray, and her step-grandfather Tim Murray, who have been in her life since she was born. Alayna and Teena have had a difficult life together; they have a love-hate relationship that is often conflict-ridden. Alayna was Jane's primary caregiver for most of Jane's life, but Jane periodically stayed with the Murrays when Alayna asked for their help. Most relevant to this case, Jane began staying with the Murrays in the summer of 2020 when the home where Alayna and Jane lived with Alayna's boyfriend became infested with fleas. In the fall of 2020, Alayna broke up with her boyfriend and moved out without a place to stay. Because Alayna had become homeless, Jane continued living with the Murrays and has remained there ever since.

In November 2020, Alayna was arrested for possession of methamphetamine. After being released from detention/incarceration, Alayna (who was still homeless) allowed Jane to continue staying with the Murrays and gave the Murrays two handwritten documents granting the Murrays permission to care for Jane.

It was around this time that Alayna's relationship with the Murrays deteriorated. Alayna became depressed, partially because her family, including Jane, was disappointed in her for her drug-related arrest. As a result of that depression, Alayna attempted suicide in late November 2020 and then entered an in-patient care facility. After being released from the in-patient program, Alayna told the Murrays that she would cut them out of Jane's life and make Jane "disappear" by taking Jane to live with her father in Wyoming, despite Jane's having no relationship with him.

In response to Alayna's threats, the Murrays filed a guardianship petition in early December 2020. The magistrate court appointed the Murrays as Jane's temporary guardians. Before the end of December, Alayna moved to vacate the temporary guardianship and to strike the Murrays' verified ex-parte motion to appoint them as Jane's temporary guardians. After an

---

[1] Richard Clouser pays child support, but he is not involved in Jane's life and did not participate in the guardianship proceedings.

expedited hearing in early January 2021, the magistrate court denied Alayna's motion to strike and her request to terminate the temporary guardianship.

Alayna then filed an answer and counterclaim, asserting three claims: (1) Idaho Code section 15-5-204 is unconstitutionally void for vagueness; (2) the statutes set forth in Idaho Code Title 15, Chapter 5, Part 2 deny Alayna's substantive due process rights to the care, custody and control of Jane and Alayna's fundamental rights as a parent; and (3) both Idaho Code sections 15-5-204 and 15-5-207 are unconstitutional by allowing a broad array of individuals to petition for guardianship, thus violating *Troxel v. Granville*, 503 U.S. 57 (2000). In February 2021, Alayna moved for summary judgment on the three claims asserted in her counterclaim. The magistrate court denied summary judgment and overruled Alayna's constitutional claims.

In July 2021, the matter proceeded to trial on the Murrays' petition for permanent guardianship. On the second day of trial, after Alayna testified and invoked the Fifth Amendment in response to questions about her drug issues, a recess was taken, and the parties reached a stipulated settlement in which Alayna agreed to the Murrays' appointment as guardians. Alayna agreed it was in Jane's best interests for the guardianship to be granted. Even so, the stipulation specified that: Alayna and Jane would continue to participate in individual and family counseling; visitation would be determined by the appointed Parenting Coordinator; Alayna would comply with her probation conditions; and no party would make disparaging comments about another to Jane. The stipulation stated that pursuant to Idaho Code section 15-5-212, any party could petition for removal of a guardian, or for modification or termination of the guardianship, on the ground that such removal, modification, or termination would be in the best interest of the child.

In April 2022, Alayna filed a petition to terminate the guardianship. An evidentiary hearing on the petition was held in January 2023, but written closing arguments were not finally submitted until June 2023. The magistrate court issued oral findings and conclusions of law in July 2023, in which the magistrate court denied the motion to terminate the guardianship. The oral findings were followed up with written findings of fact and conclusions of law. The court found that although Alayna would be able to meet Jane's basic physical needs, including housing and having sufficient income, Alayna was otherwise an unfit parent because she would not be able to provide Jane a stable home environment. The magistrate court's findings elaborated that Alayna was unfit, centering on concerns about Alayna's ability to meet Jane's mental, emotional, and educational needs, and the extent of Alayna's methamphetamine use. Alayna moved the court to reconsider,

but that motion was later withdrawn. This Court granted Alayna's motion for permissive appeal in early December 2023 and this appeal followed.

## II.    ISSUES ON APPEAL

1. Does the Idaho Parental Rights Act apply to guardianships brought by private parties?
2. Are Idaho Code sections 15-5-204, 15-5-207, 15-5-209, and 15-5-212 constitutional?
3. Is the magistrate court's finding that Alayna is an unfit parent clearly erroneous?
4. Do the Murrays' actions constitute parental alienation and warrant dismissal of the guardianship?

## III.    STANDARDS OF REVIEW

This Court reviews constitutional questions, which are pure questions of law, de novo. *Nelson v. Evans*, 170 Idaho 887, 894, 517 P.3d 816, 823 (2022) (citing *Brockett Co., LLC v. Crain*, 168 Idaho 375, 380, 483 P.3d 432, 437 (2021)). Decisions implicating parental rights are subject to a showing of clear and convincing evidence, or a showing that the thing to be proven is "highly probable or reasonably certain." *Nelson*, 170 Idaho at 894, 517 P.3d at 823 (citing *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also In re Adoption of Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006)).

"This Court is required to conduct an independent review of the magistrate court record, but must draw all reasonable inferences in favor of the magistrate court's judgment because the magistrate court has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive, and to judge the character of the parties." *In re Doe (2013-29)*, 156 Idaho 683, 687, 330 P.3d 1040, 1045 (2014). Factual determinations will be upheld so long as they are supported by substantial and competent evidence. *Nelson*, 170 Idaho at 894, 517 P.3d at 823 (citing *Leavitt v. Leavitt*, 142 Idaho 664, 668, 132 P.3d 421, 425 (2006)).

## IV.    ANALYSIS

Alayna argues that several Idaho guardianship statutes are unconstitutional. As support for her constitutional claims, she contends that the Idaho Parental Rights Act ("Act"), which codifies the fundamental rights of parents to the care and custody of their children, requires that Idaho's guardianship statutes survive strict scrutiny review, rather than the more permissive rational basis review. *See Bradbury v. Idaho Jud. Council*, 136 Idaho 63, 69, 28 P.3d 1006, 1012 (2001). As to the merits of her constitutional claims, Alayna maintains that the contested statutes—Idaho Code sections 15-5-204 and -207 (Conditions and procedure for appointment of guardian of a minor); Idaho Code section 15-5-209 (Power and duties of the guardian of a minor); and Idaho Code

section 15-5-212 (Resignation, removal, modification, or termination proceedings)—are unconstitutional because they do not satisfy strict scrutiny. *See* I.C. §§ 15-5-204, 15-5-207, 15-5-209, 15-5-212. Separate from her attacks on the nature of the guardianship statutes themselves, Alayna argues that the "best interest of the child test" found in Idaho Code section 15-5-212 is unconstitutionally vague.

As to the merits of the magistrate court's factual findings, Alayna argues that the court's finding that she is an unfit parent is clearly erroneous. Finally, Alayna maintains that the Murrays' actions constituting parental alienation warrant dismissal of the guardianship. As explained below, we disagree with all of Alayna's assertions.

### A. The Idaho Parental Rights Act does not apply to guardianships brought by private parties; therefore, strict scrutiny does not apply to our analysis.

Before reaching the constitutionality of Idaho's guardianship statutes, we must decide whether the Parental Rights Act and its strict scrutiny requirement—that restrictions on parental rights must be essential to further a compelling government interest, and must also be the least restrictive means of furthering that interest—apply to Idaho's guardianship statutes. I.C. § 32-1013(1)(a), (b). Alayna maintains that two sections of the Act are relevant here: Idaho Code section 32-1010 (Idaho parental rights act) and section 32-1013 (Interference with fundamental parental rights restricted). I.C. §§ 32-1010, 32-1013.

Idaho Code section 32-1010 provides an overview of the Act and references the application of the "strict scrutiny standard" to cases involving state action against the rights of Idaho parents:

(1) This section through section 32-1014, Idaho Code, shall be known and may be cited as the "Idaho Parental Rights Act."

(2) The interests and role of parents in the care, custody and control of their children are both implicit in the concept of ordered liberty and deeply rooted in our nation's history and tradition. They are also among the unalienable rights retained by the people under the ninth amendment to the constitution of the United States.

(3) The interests of the parents include the high duty and right to nurture and direct their children's destiny, including their upbringing and education.

(4) The state of Idaho has independent authority to protect its parents' fundamental right to nurture and direct their children's destiny, upbringing and education.

(5) The protections and rights recognized in sections 32-1011 through 32-1014, Idaho Code, are rooted in the due process of law guaranteed pursuant to

5

section 13, article I, of the constitution of the state of Idaho.

(6) *Governmental efforts* that restrict or interfere with these fundamental rights are only permitted if that restriction or interference satisfies *the strict scrutiny standard* provided in section 32-1013, Idaho Code.

(7) Nothing in this act shall be construed as altering the established presumption in favor of the constitutionality of statutes and regulations.

I.C. § 32-1010(1)-(7) (emphasis added). Idaho Code section 32-1013 describes the limitations on governmental interference with parental rights and when the strict scrutiny standard is applied:

(1) *Neither the state of Idaho, nor any political subdivision thereof*, may violate a parent's fundamental and established rights protected by this act, and any restriction of or interference with such rights shall not be upheld unless it demonstrates by clear and convincing evidence that the restriction or interference is both:

(a) Essential to further a compelling governmental interest; and

(b) The least restrictive means available for the furthering of that compelling governmental interest.

(2) The foregoing principles apply to any interference whether now existing or hereafter enacted.

(3) Nothing in this act shall be construed as invalidating the provisions of the child protective act in chapter 16, title 16, Idaho Code, or modify the burden of proof at any stage of proceedings under the child protective act.

(4) When a parent's fundamental rights protected by this act are violated, a parent may assert that violation as a claim or defense in a judicial proceeding and may obtain appropriate relief *against the governmental entity*.

(5) *If a parent prevails in a civil action against the state, or a political subdivision thereof,* as provided in subsection (4) of this section, the parent is entitled to reasonable attorney's fees and costs.

I.C. § 32-1013 (emphasis added).

As the plain language of both sections 32-1010 and 32-1013 sets forth, the Act's prohibitions only relate to government conduct. There is no language in the Act that makes it applicable to the actions of private persons.

Turning to Idaho's guardianship statutes, Idaho Code section 15-5-207 provides four classifications of people who may initiate guardianship proceedings. Relevant here, any relative of the minor may initiate such a petition. I.C. § 15-5-207(1)(a). There is no dispute that the Murrays are private individuals and grandparents of the minor. As such, they brought their guardianship petition under Idaho Code section 15-5-207(a). The Idaho Parental Rights Act restricts

6

"government efforts" and "the state of Idaho, [and] any political subdivision thereof" from infringing on parental rights and provides relief when a parent makes a claim "against [a] governmental entity." *See* I.C. §§ 32-1010(6), 32-1013(1), (4), (5). Since this case involves a dispute among family members, the Murrays argue that the Act and its prohibitions/mandates are irrelevant.

Alayna counters that, like a state court's enforcement of a racially discriminatory contract between private parties constituting state action in *Shelley v. Kramer*, 334 U.S. 1, 14 (1948), the magistrate court's action in a guardianship proceeding constitutes the "governmental efforts" regulated by the Idaho Parental Rights Act. I.C. § 32-1010(6). In *Shelley*, white homeowners in Missouri and Michigan sued to enforce a restrictive covenant that sought to prohibit black people from buying certain real estate parcels. *Shelley*, 334 U.S. at 4–6. The Missouri and Michigan Supreme Courts upheld the restrictions as valid. *Id.* at 6–7. The United States Supreme Court held that even though the agreements were between private parties, the racially restrictive covenant violated the Fourteenth Amendment's Equal Protection clause because the agreements were enforced by state courts. *Id.* at 13–14. Thus, the *Shelley* Court held that judicial enforcement of a private agreement in this context constitutes state action. *Id.* at 14.

But importantly for our purposes here, *Shelley's* holding has generally been limited to racial and gender discrimination. *See Barrows v. Jackson*, 346 U.S. 249 (1953) (prohibiting a state court from awarding damages when a seller breached a racially restrictive real estate covenant); *In re Certain Scholarship Funds*, 575 A.2d 1325 (N.H. 1990) (holding that state court enforcement of a trust that discriminates on gender is state action). While the right to parent one's child is undoubtedly a fundamental right, a trial court's involvement in protecting children at risk through a private guardianship proceeding is patently different than a court sanctioning a racially discriminatory contract as in *Shelley*. Alayna did not provide, nor have we found, examples of the *Shelley* principle being applied to guardianship petitions initiated by a private party, and we decline to extend it to the circumstances here.

Therefore, because the Idaho Parental Rights Act is limited to government action, and the guardianship in this case was brought by private actors, we hold that the Idaho Parental Rights Act does not apply to the circumstances in this guardianship matter. Our conclusion is bolstered by reasoning from recent decisions of the Idaho Court of Appeals and this Court. The Court of Appeals has noted that the Parental Rights Act only applies to "the state of Idaho" and "any

7

political subdivision thereof." *Nicholson v. Bennett (In re Doe)*, 166 Idaho 720, 724, 462 P.3d 1184, 1188 (Ct. App. 2020) (citing I.C. § 32-1013). Based thereon, that court held that a guardianship judgment "does not convert an action initiated by private citizens into a State action." *Id*. As the court recognized, private parties in guardianship cases are not state actors; thus, the Idaho Parental Rights Act's strict scrutiny requirement does not apply to permanent guardianship cases.

By contrast, we recently held in *Nelson v. Evans* that a statute allowing a court to order grandparent visitation was unconstitutional. 170 Idaho at 898-99, 517 P.3d at 828-29. We reached that conclusion because the statute purported to allow a court to order grandparent visitation "over the objection of *fit* parents." *Nelson*, 170 Idaho at 899, 517 P.3d at 828 (emphasis added). As a result, "the fundamental right to parent is implicated." *Id*. Citing the Idaho Parental Rights Act and other authorities, as the bases for parents' fundamental rights, we concluded that laws infringing on parental rights are subject to strict scrutiny and we analyzed the grandparent visitation statute under that standard. 170 Idaho at 898-99, 517 P.3d at 828-29. Importantly, there was no allegation in *Nelson* that the parents were unfit, or that the children over whom the grandparents sought visitation were at risk. Such facts place *Nelson* in an entirely different light than this case.

*Nicholson* concluded that a guardianship petition brought by a private party is not state action, and therefore strict scrutiny does not apply. *Nelson* held that the grandparent visitation statute must survive strict scrutiny because it infringed on the rights of fit parents. This case concerns a guardianship initiated by private actors to protect a child at risk, and the guardianship filing does not convert this case into "government efforts" infringing on the fundamental rights of *fit* parents.

The reasoned concurring opinion of our colleagues who would advocate for strict scrutiny in cases like this one get there by reasoning that the legislative action of adopting the guardianship statutes is governmental action which therefore requires strict scrutiny be applied to Alayna's constitutional challenge here. But that does not change the fact that the *action* being undertaken here, though brought about under statutory authority, is absolutely not action by governmental actors taking away Alayna's parental rights. *See Cobb v. Georgia Power Co.*, 757 F.2d 1248, 1251 (11th Cir. 1985) ("[O]ne who has obtained a state court order or judgment is not engaged in state action merely because it used the state court legal process."); *see also Bass v. Parkwood Hosp.*, 180 F.3d 234, 242 (5th Cir. 1999) ("A private citizen does not become a state actor merely by

8

filing a private civil action, even where authorized by state statutes.").

We hold that because the guardianship at issue here does not qualify as "government efforts" prohibited by the Idaho Parental Rights Act, we decline to apply strict scrutiny to the guardianship laws as applied in this case.

**B. Alayna failed to preserve her constitutional challenge to Idaho Code sections 15-5-204 and 15-5-207, and Idaho Code sections 15-5-209 and 15-5-212 are constitutional.**

Alayna raises several constitutional arguments before this Court; however, the Murrays argue that Alayna has waived her ability to challenge Idaho Code sections 15-5-204 and 15-5-207 on appeal based on her stipulation before the magistrate court to grant the permanent guardianship to the Murrays. The Murrays argue that Alayna's waiver means she has no standing to assert her claims and that her constitutional arguments are moot. We will thus first address the waiver question.

*1. Alayna has waived her right to challenge Idaho Code sections 15-5-204 and 15-5-207 on appeal.*

Idaho Code sections 15-5-204 and -207 govern the conditions and procedures for appointing a guardian of a minor. I.C. §§ 15-5-204, 15-5-207 (hereinafter, collectively, the "guardianship statutes"). Idaho Code section 15-5-204 provides that a court may appoint a guardian for a minor "upon a finding that the child has been neglected, abused, or abandoned or whose parents are unable to provide a stable home environment." I.C. § 15-5-204. In addition to identifying who may initiate a guardianship proceeding, Idaho Code section 15-5-207 also states that the court may appoint a temporary guardian for a minor if it finds by a preponderance of the evidence that the appointment is necessary to protect the minor's health, safety or welfare until the petition for a guardian can be heard. I.C. § 15-5-207(5)(a).

The Murrays assert that Alayna has waived her right to pursue her claims as to the constitutionality of the guardianship statutes because she voluntarily agreed to the guardianship in the stipulation, and thus implicitly acknowledged the validity of those laws. The Murrays also assert that Alayna waived her right to challenge the constitutionality of the guardianship statutes when she failed to appeal the guardianship appointment. Alayna argues that she is not appealing the appointment of the initial guardianship, but rather the magistrate court's decision not to terminate the guardianship. She contends that she "simply reraised the issue of the constitutionality of Idaho Code sections 15-5-204 and [-]207 when she sought to terminate the guardianship." She

9

also argues that she has standing to challenge the magistrate court's decision not to terminate the guardianship.

We recognize the scope of Alayna's permissive appeal here is from the magistrate court's refusal to terminate the guardianship, not the original guardianship appointment. Even so, Alayna raised the constitutionality of Idaho Code sections 15-5-204 and -207 when the Murrays originally petitioned for guardianship and she filed her motion for summary judgment. After the magistrate court issued an order finding those statutes constitutional and denied her motion, Alayna stipulated to the guardianship, and that stipulation was approved by the magistrate court, resulting in a final judgment that Alayna did not appeal. As such, Alayna has waived the right to appeal the constitutionality of the guardianship statutes. *See Herndon v. City of Sandpoint*, 172 Idaho 228, 531 P.3d 1125, 1146–47 (2023) (payment of judgment for attorney fees precluded appellant from appealing the attorney fee award); *Alcala v. Verbruggen Palletizing Sols., Inc.*, 172 Idaho 188, 531 P.3d 1085, 1112 (2023) (where satisfaction of judgment was filed in the trial court, the appellant's challenge to the amounts awarded in the judgment was moot); *Salt Lake Hardware Co. v. Steffler*, 87 Idaho 383, 385–86, 393 P.2d 607, 608 (1964) (appellants' attempt to amend a motion to dissolve a writ of attachment the day after the trial court entered its memorandum decision that appellants' motion to dissolve was insufficient, "they acquiesced in the order of the trial court and waived their right to appeal from such order.").

The magistrate court made a similar ruling below when Alayna attempted to assert her constitutional challenge during the post-judgment motion to terminate the guardianship. Alayna argues that the magistrate court erred when it found that she waived her right to challenge Idaho Code sections 15-5-204 and -207 in the termination proceeding because there is a presumption against waiver when a fundamental right is at stake. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999). In support of her position, she relies on *Matter of Doe II*, 169 Idaho 82, 86, 491 P.3d 644, 648 (Ct. App. 2021). In *Matter of Doe II*, the Idaho Court of Appeals permitted an unpreserved due process argument to be heard on appeal because the magistrate court terminated parental rights despite acknowledging counsel's concern that the parent was incoherent, and concluded that it was "entirely possible" that the parent was "simply not competent to really help [her counsel] with the case" at the termination hearing. *Id.* at 85–87, 491 P.3d at 647–49. In that case, the Court of Appeals acknowledged that issues not raised below are generally not considered for the first time on appeal. *Id.* After discussing the caselaw from this

Court, and considering the fundamental right at issue, the Court of Appeals allowed the parents' due process claim to be considered on appeal:

> This [c]ourt generally does not address issues not supported by cogent argument and citation to legal authority, even in a case terminating parental rights. *Idaho Dep't of Health & Welfare v. Doe (2018-24)*, 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018). Normally, such failures would end our inquiry.
> . . .
> The [c]ourt, however, may address certain narrow, unpreserved issues involving due process violations. *Idaho Dep't of Health & Welfare v. Doe (2017-32)*, 163 Idaho 536, 538, 415 P.3d 945, 947 (2018); *State v. Doe*, 144 Idaho 534, 536, 164 P.3d 814, 816 (2007). For example, the Idaho Supreme Court has previously addressed due process errors affecting parents' fundamental rights, including procedural errors and the application of an incorrect standard of review, even though the parties did not raise the issue on appeal. *Doe (2017-32)*, 163 Idaho at 538, 415 P.3d at 947 (addressing procedural error); *Doe*, 144 Idaho at 536, 164 P.3d at 816 (addressing application of incorrect legal standard). We recognize the Idaho Supreme Court has also recently held that a parent failed to preserve his due process argument for appeal and that the "failure to preserve his argument [was] dispositive." *Doe (2019-16)*, 166 Idaho at 63, 454 P.3d at 1146. However, the Idaho Supreme Court did not expressly overrule the two prior opinions noted above in which it addressed unpreserved due process violations. Based on Idaho Supreme Court precedent and the record before us, we deem it appropriate to address Doe's argument because it raises due process concerns related to the termination of her parental rights.

*Matter of Doe II*, 169 Idaho at 86–87, 491 P.3d at 648–49.

*Matter of Doe II* is distinguishable from Alayna's case in two ways. First, the termination of parental rights at issue in *Matter of Doe II* is a much more permanent alteration of the parent-child relationship than the guardianship in Alayna's case. Indeed, it is a termination, a permanent eradication, of the parent-child relationship, whereas a guardianship addresses who cares for the child during the child's minority. The parent-child relationship, although temporally and spatially changed during a guardianship, is not terminated. Second, Alayna has not alleged that her failure to appeal the guardianship appointment is attributable to any disability on her part, let alone a severe competency issue. Therefore, *Matter of Doe II* is not a proper basis on which to permit Alayna to resurrect the issues she put to rest by stipulating to the guardianship (with the assistance of counsel) in the first place.

Alayna also points to an unpublished Kansas Court of Appeals case for support. *See In re Guardianship of H.C.*, 270 P.3d 1229 (Kan. Ct. App. 2012) (unpublished). We first note that, as Kansas courts recognize, pursuant to Kansas Supreme Court Rule 7.04(f), "unpublished opinions

11

are not precedential and are not favored for citation. They may be cited for persuasive authority on a material issue not addressed by a published Kansas appellate court opinion." Kansas Supreme Court Rule 7.04(f). As the case is not favored for citation by Kansas courts, we give it little weight here other than to note that the Kansas court found that the mother had not implicitly waived her right to invoke the parental-preference doctrine when she voluntarily consented to a guardianship so that her children would qualify for health insurance through their grandparents. *In re Guardianship of H.C.*, 270 P.3d 1229. Agreeing to a guardianship to obtain insurance for one's children (as a fit parent) is much different than stipulating to a guardianship based on the child's best interests being better served by living with her grandparents due to the biological parent's unfitness to parent that child.

Given Alayna's conduct in stipulating to the permanent guardianship appointment, we hold that she has waived her right to argue that the guardianship statutes are unconstitutional.

### 2. *Idaho Code section 15-5-209 is constitutional.*

Alayna argues that Idaho Code section 15-5-209 (Powers and Duties of Guardian of Minor) is unconstitutional because: (1) courts do not have authority to customize the powers granted to guardians; and (2) the statute does not include a duty to preserve the parent-child relationship.

Alayna argues that the statute's broad grant of power to guardians restricts a parent's rights beyond what may be necessary to protect the child's welfare. Idaho Code section 15-5-209 reads in relevant part:

> A guardian of a minor has the powers and responsibilities of a parent who has not been deprived of custody of his minor and unemancipated child, except that a guardian is not legally obligated to provide from his own funds for the ward.
> . . .
> 3) The guardian is empowered to facilitate the ward's education, social, or other activities and to authorize medical or other professional care, treatment, or advice. . . . A guardian may consent to the marriage or adoption of his ward.

I.C. § 15-5-209. Alayna asserts that this broad grant of power is excessive, noting that this Court observed that the statute does not permit the Court to modify guardianships:

> There is no provision in the guardianship statutes permitting a court to restrict or modify the guardian's powers and responsibilities based upon what the court deems are the best interests of the child. The court has no authority to grant other parties visitation with the ward or to require the guardian to do so. With respect to the guardian, the court has the authority to appoint the guardian and to remove the guardian, but not to manage how the guardian exercises his or her powers and

12

responsibilities.

*Doe v. Doe (2016-05)*, 160 Idaho 311, 314, 372 P.3d 366, 369 (2016). She also argues that statutes in other states grant a court discretionary power to limit the authority of guardians depending on the circumstances, which can include mandating visitation with the parent. *See, e.g.,* Del. Code Tit. 13 § 2353; Nev. Rev. Stat. § 159A.0565; Me. Rev. State. Tit. 18, § 5-206; Ind. Code § 29-3-8-8; and Ohio Rev. Code § 2111.02(B)(1).

But Alayna's argument fails to acknowledge that shortly after the *Doe (2016-05)* opinion was issued, the Idaho Legislature amended Idaho Code section 15-5-212 in 2016 to permit the "modification or termination" of guardianships:

> § 15–5–212. Resignation, ~~or~~ removal**, modification or termination** proceedings (~~a~~ **1)** Any person interested in the welfare of a ward~~,~~ or the ward if fourteen (14) or more years of age, may petition for removal of a guardian**, or for modification or termination of the guardianship,** on the ground that **such** removal**, modification or termination** would be in the best interest of the ward. A guardian may petition for permission to resign. A petition for removal or for permission to resign may, but need not, include a request for appointment of a successor guardian.

2016 Idaho Sess. Laws 416 (S.B. 1352) (strikethroughs and underlining in original; bolding added for emphasis). This statute explicitly contradicts what we held in *Doe (2016*-05); therefore, courts now have statutory authority to modify a guardianship in ways that are in a ward's best interests. I.C. § 15-5-212(a)(1) (2016).

Statutes relating to the same subject must be construed together. *See City of Sandpoint v. Sandpoint Indep. Highway Dist*., 139 Idaho 65, 69, 72 P.3d 905, 909 (2003). "[S]tatutory or constitutional provisions cannot be read in isolation, but must be interpreted in the context of the entire document." *Westerberg v. Andrus*, 114 Idaho 401, 403, 757 P.2d 664, 666 (1998); *see also Flying Elk Inv., LLC v. Cornwall*, 149 Idaho 9, 15, 232 P.3d 330, 336 (2010) (Unambiguous statutes "should not be read in isolation but instead…interpreted in the context of the entire document.").

When properly read as a whole, Idaho's guardianship statutes provide courts the authority to modify a guardianship for the best interest of the child, which as we have previously recognized, includes that it "is usually in the best interest of the children to be in the custody of the natural parent(s)." *Doe v. Doe (2010-15)*, 150 Idaho 432, 436, 247 P.3d 659, 663 (2011). That means that courts work to preserve the parent-child relationship—including through modifying the guardianship when appropriate—so that the child can be returned to the custody of his or her

natural parents if and when that parent becomes fit, because fit natural parents have a greater right to custody than anyone else. Because courts have been granted the authority to modify guardianships in Idaho Code section 15-5-212, and that authority can be used to limit the power of guardians in Idaho Code section 5-15-209, Alayna's argument that the statute is unconstitutional as lacking the ability to narrowly tailor the terms of the guardianship is unfounded. Alayna's argument is particularly undercut here where the magistrate court explicitly provided limitations on the guardianship to promote Alayna's relationship with her daughter, by requiring joint family counseling and the use of a parenting coordinator.

Alayna also argues that Idaho Code section 15-5-209 is unconstitutional because it does not include a duty to preserve the parents' fundamental right to a relationship with their child, including specific attempts at reunification. She contrasts this with Idaho's Child Protective Act ("CPA"), which emphasizes "the philosophy that wherever possible family life should be strengthened and preserved," I.C. § 16-2001, and requires, among other things, a plan with the goal of reunification. I.C. § 16-1621. While this duty is not mandated by section 15-5-209, the statute provides:

> A guardian of a minor has the powers and responsibilities of a parent who has not been deprived of custody of his minor and unemancipated child, except that a guardian is not legally obligated to provide from his own funds for the ward and is not liable to third persons by reason of the parental relationship for acts of the ward.

I.C. § 15-5-209. Viewing these responsibilities against the mandate of section 15-5-204(1) that "the court shall consider the best interests of the child as the primary factor in the determination whether to appoint, and whom to appoint, as a guardian for such child[,]" the obligation to include contact with a parent who is struggling, but who may still be a positive influence on the child, is left to the good discretion of Idaho's magistrate judges; thus, the question of whether such parental influence is in a child's best interests is best left to those judges who view the overall circumstances of these cases first-hand. Requiring the statute to mandate contact with a potentially abusive parent is neither prudent nor wise, and the lack of such a mandate does not make Idaho's statute unconstitutional.

Our concurring colleagues would not address the issue or apply rational basis review because Alayna's argument is rooted in the Idaho Parental Rights Act rather than the constitutions of the United States or the state of Idaho. However, the Act itself incorporates both of these constitutions and associated principles. For example, the Act states that "[t]he protections and

14

rights recognized in sections 32-1011 through 32-1014, Idaho Code, are rooted in the due process of law guaranteed pursuant to section 13, article I, of the constitution of the state of Idaho." I.C. § 32-1010(5); *see also* I.C. § 32-1010(2) (noting that the interest of parents in the care, custody, and control of their children is "both implicit in the concept of ordered liberty and deeply rooted in our nation's history and tradition"). Accordingly, a challenge to Idaho's guardianship statutes under the Idaho Parental Rights Act necessarily involves considering whether or not they pass constitutional muster. Because strict scrutiny is not triggered, rational basis is the appropriate level of review.

Under rational basis review, a statute is constitutional if it is "rationally related to a legitimate government purpose." *BABE VOTE v. McGrane*, 173 Idaho 608, ___, 546 P.3d 694, 711–12 (2024) (citations omitted). "Rational basis review only requires us to determine whether 'there is any conceivable state of facts which will support [the statutory provision],' without judging 'the wisdom or fairness of the legislation being challenged.'" *Id*. at ___, 546 P.3d at 712. Idaho Code section 15-5-209 serves the legitimate government purpose of establishing the power and duties of a minor's guardians to ensure that the minor's best interests are preserved and protected. Ensuring that the minor's needs are met is rationally related to the government's interest in child welfare. Thus, Idaho Code section 15-5-209 satisfies rational basis review.

### 3. Idaho Code section 15-5-212 is constitutional.

Alayna argues that Idaho Code section 15-5-212, which governs the resignation, removal, modification, or termination proceedings for guardians of minors, is unconstitutional. She asserts that the statute is not constitutional because: (1) it does not require a showing of harm to deny a petition to terminate a guardianship (i.e., it applies a "bare best interest" test); (2) other states' guardianship statutes demonstrate more narrow alternatives for terminating a guardianship; (3) the statute does not require a clear and convincing burden of proof against parties opposing a parent's petition to terminate a guardianship; and (4) the statute does not provide meaningful guidance on how to apply the best interest test. Alayna makes these arguments in the context of a strict scrutiny analysis, but pursuant to our holding that the Idaho Parental Rights Act does not apply, we will consider her arguments under rational basis review. Apart from her argument that strict scrutiny applies, Alayna also argues that the statute is unconstitutionally broad and vague.

Idaho Code section 15-5-212(1) states:

(1) Any person interested in the welfare of a ward, or the ward if fourteen (14) or

more years of age, may petition for removal of a guardian, or for modification or termination of the guardianship, on the ground that such removal, modification or termination would be in the best interest of the ward. A guardian may petition for permission to resign. A petition for removal or for permission to resign may, but need not, include a request for appointment of a successor guardian.

I.C. § 15-5-212(1) (2016).

First, Alayna argues that Idaho Code section 15-5-212 is unconstitutional because it does not require a showing of harm to the child to deny a petition to terminate a guardianship. She asserts that this Court does not apply the "bare" best interest of the child in the context of parental rights without a showing of harm to the child. *Nelson v. Evans*, 170 Idaho 887, 900, 517 P.3d 816, 829 (2022). The Murrays contend that when Idaho Code section 15-5-212 is properly read in conjunction with the rest of Idaho's guardianship statutes, it is apparent that Idaho Code section 15-5-204 requires a showing of harm before a court may appoint a guardian. The Murrays also argue that Alayana's reliance on *Nelson* is misplaced because in that case—unlike in Alayna's case—there was no concern about the fitness of the parent, which is the harm standard. *Nelson*, 170 Idaho at 900, 517 P.3d at 829.

As noted, statutes relating to the same subject must be construed together. *See City of Sandpoint*, 139 Idaho at 69, 72 P.3d at 909. Idaho Code sections 15-5-204 (Court appointment of guardian of minor—Conditions for appointment) and 15-5-212 (Resignation, removal, modification or termination proceedings) are both in Title 15, Chapter 5, Part 2 titled "Guardians of Minors." Title 15 contains fourteen statutes on the topic. As described previously, Idaho Code section 15-5-204(1) states in relevant part that "[t]he court may appoint a guardian for an unmarried minor *if* all parental rights of custody have been terminated by prior court order or upon a finding that the child has been neglected, abused, or abandoned or whose parents are unable to provide a stable home environment." I.C. § 15-5-204(1) (emphasis added).

Here, the structure, organization, and title of each statute in Title 15, Chapter 5, Part 2 indicate that the legislature intended that the statutes operate in conjunction with each other. Idaho Code section 15-5-204(1) requires that a court find that the child has been harmed—in the form of neglect, abuse, abandonment, or an unstable home environment. A court has the authority to

appoint a guardian only upon making this finding.[2]

A statute satisfies rational basis review if it is rationally related to a legitimate government interest. *BABE VOTE*, 173 Idaho at ___, 546 P.3d at 711–12. The government has a legitimate interest in child safety, particularly when a court has found a parent to be unfit under the circumstances set forth in Idaho Code section 15-5-204. Once the door is opened under section 15-5-204, it is rational for the state to ensure the child's well-being after the guardian is appointed, which includes evaluating petitions to terminate the guardianship. Therefore, we hold that Idaho Code section 15-5-212 requires the threshold finding of harm stated in Idaho Code section 15-5-204 and in that regard satisfies rational basis review.

Second, Alayna argues that other states' guardianship statutes demonstrate narrower alternatives for terminating a guardianship. This argument needs little analysis because a statute does not need to be narrowly tailored to satisfy rational basis review. *BABE VOTE*, 173 Idaho at ___, 546 P.3d at 711–12. Further, while we may consult other states' statutes as persuasive authority, "we will reject non-binding authorities . . . when they do not 'fit the needs of Idaho jurisprudence.'" *Easterling v. HAL Pac. Props., L.P.*, 171 Idaho 500, 511, 522 P.3d 1258, 1269 (2023) (quoting *Peterson v. Idaho First Nat. Bank*, 117 Idaho 724, 726, 791 P.2d 1303, 1305 (1990)). Idaho has a legitimate interest in child welfare, and it is rational for the State to consider the best interest of the child when determining whether or not to terminate a guardianship. Therefore, we hold that this aspect of Idaho Code section 15-5-212 satisfies rational basis review.

Third, Alayna argues that Idaho Code section 15-5-212 is unconstitutional because it does not explicitly state a standard of proof, and therefore does not require parties opposing a parent's petition to terminate a guardian to meet the clear and convincing standard. Because the statute does not specify a standard of proof, it could be understood to permit the preponderance standard. Alayna cites *Nelson*, arguing that the clear and convincing standard is required for statutes that infringe on the fundamental rights of parents. 170 Idaho at 894, 517 P.3d at 823.

This Court has regularly applied the clear and convincing standard for terminating parental rights, s*ee In re Adoption of Doe*, 143 Idaho at 191, 141 P.3d at 1060, but we have not specified the standard of proof to be applied in guardianship termination petitions. The Court of Appeals, however, addressed a closely related issue in *Nicholson*, and determined that the preponderance of

---

[2] There may be stipulated reasons to appoint a guardian outside the harm finding required in the usual case. *See In re Guardianship of H.C.*, 270 P.3d 1229 (Kan. Ct. App. 2012) (unpublished).

the evidence standard is the appropriate burden of proof for permanent guardianships. 166 Idaho at 728, 462 P.3d at 1192. The court reasoned that because a preponderance is the standard of proof required by Idaho Code section 15-5-207 to establish a temporary guardianship, and temporary and permanent guardianships limit parental rights similarly in that they may both be challenged at any time, a permanent guardianship did not require a higher level of proof. *Id.* The court distinguished the burden of proof required in guardianships from the clear and convincing standard required for the more serious and permanent infringement of parental rights at issue in parental rights termination cases. *Id.* at 728–29, 462 P.3d at 1192–93. The Court of Appeals' reasoning in *Nicholson* is compelling, and we adopt it. We hold that because guardianships are temporary and do not terminate parental rights, it is sufficient to apply the preponderance of the evidence standard.

Fourth, Alayna argues that Idaho Code section 15-5-212 is constitutionally flawed because it does not provide meaningful guidance for how to apply the best interest test. She concedes that Idaho courts evaluating guardianships have looked to the factors in Idaho Code section 32-717[3]—a statute for determining custody in a divorce action—for determining the best interest of the child. Though the statute is specifically applicable to custody decisions in divorce proceedings, those factors, and "all relevant factors," *id.*, are equally pertinent to a best interest analysis in guardianship proceedings. But Alayna argues that in *Nelson*, this Court held that the factors in Idaho Code section 32-717 do not apply to a dispute between a parent and grandparents because those factors "appl[y] to custody disputes between equal and competing fundamental interests" of two parents. *Nelson*, 170 Idaho at 896, 517 P.3d at 825.

Alayna's argument on this point falters because she implicitly admits she has guidance about how the best interest factors are applied by conceding that Idaho courts have often used the Idaho Code section 32-717 factors in guardianship decisions. In her opening brief, she writes,

---

[3] Idaho Code section 32-717(1) provides:

In an action for divorce the court may, before and after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper in the best interests of the children. The court shall consider all relevant factors which may include:
(a) The wishes of the child's parent or parents as to his or her custody;
(b) The wishes of the child as to his or her custodian;
(c) The interaction and interrelationship of the child with his or her parent or parents, and his or her siblings;
(d) The child's adjustment to his or her home, school, and community;
(e) The character and circumstances of all individuals involved;
(f) The need to promote continuity and stability in the life of the child; and
(g) Domestic violence as defined in section 39-6303, Idaho Code, whether or not in the presence of the child.

"Idaho courts have previously looked to the factors found at Idaho Code § 32-717 in guardianship proceedings since I.C. § 15-5-212 does not provide any guidance. *See Stockwell v. Stockwell,* 116 Idaho 297, 299[, 775 P.2d 611, 613] (1989)." *See also Nicholson*, 166 Idaho at 729, 462 P.3d at 1193 (finding that dramatic improvement in school supported continuing the guardianship under the best interest of the child test); *In Interest of Doe*, 164 Idaho 84, 86, 425 P.3d 285, 287 (2018) (noting that the magistrate court considered child's preference of guardian under best interests of the child test); *In re Guardianship of Doe*, 157 Idaho 750, 752, 339 P.3d 1154, 1156 (2014) (denying petition to terminate guardianship because parent was incarcerated).

In addition, Alayna's reliance on *Nelson* does little to bolster her argument. While her appeal, like *Nelson*, concerns a dispute between parents and grandparents, she ignores that the *Nelson* Court refused to apply the best interest test (and its associated factors) to the grandparent visitation question specifically because the parents were *fit*. But in the instant case, the magistrate court found Alayna to be an unfit parent, which undermines her claim that *Nelson* is controlling in her case. Applying the rational basis test to the best interest of the child test in Idaho Code section 15-5-212, we hold that it is rational for the state to use a range of relevant factors—even "all relevant factors" under Idaho Code section 32-717(1)—to determine the best interest of the child in guardianship termination petitions.

Fifth, Alayna argues that separate from the strict scrutiny analysis, Idaho Code section 15-5-212 is unconstitutionally broad and vague because it relies on the best interest test. She contends that the statute provides "no limitation for the courts to receive and evaluate evidence," and that the magistrate court acknowledged that when it stated: "you can look at any factor that you think is relevant" when examining the child's best interest.

Alayna cites two legal scholars to support her claim that the best interest test is unconstitutionally vague. *See* Janet Weinstein, *And Never the Twain Shall Meet: The Best Interests of Children and the Adversary System*, 52 U. MIAMI L. REV. 79 (1997); and Eugene Volokh, *Parent-Child Speech and Child Custody Speech Restrictions*, 81 N.Y.U. L. REV. 631 (2006). But neither article addresses unfit parents, which is the threshold for guardianship cases generally, and this case in particular. The Weinstein article states that "[i]n family custody and visitation proceedings, this tension arises because there is often very little difference between the capabilities of the two biological parents to provide decent parenting to the child." Weinstein, 52 U. MIAMI L. REV. at 109. That is nothing like what this case presents. The Volokh article is also premised on

fit parents in a custody dispute and focuses on impacts to a parent's free speech rights rather than vagueness as it relates to child welfare. Volokh, 81 N.Y.U. L. REV. at 698. These articles, while of note in cases involving two competing fit parents, are inapplicable here.

The Murrays contend that the best interest test is familiar within the legal system because it is frequently used in child custody, guardianship, and parental rights termination cases. *Doe*, 164 Idaho at 86, 425 P.3d at 287; *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014) ("Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship."). The Murrays also state that because this Court has applied the best interest test as constitutionally permissible in parental termination cases, the test must also be constitutionally permissible to determine guardianships, which present a lesser infringement on parental rights than termination cases.

A statute will be found unconstitutionally vague if "[persons] of common intelligence must necessarily guess at its meaning, and differ as to its application." *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 716, 719 P.2d 1285, 1295 (1990) (quoting *State v. Marek,* 112 Idaho 860, 866, 736 P.2d 1314, 1320 (1987)). "A statute should not be held void for uncertainty if any practical interpretation can be given it." *Doe I v. Doe*, 138 Idaho 893, 903, 71 P.3d 1040, 1050 (2003) (citing *State* v. *Cobb,* 132 Idaho 195, 197, 969 P.2d 244, 246 (1998)).

> While more often applied to criminal statutes, the void for vagueness doctrine applies equally to civil statutes. *See Olsen,* 117 Idaho at 716, 791 P.2d at 1295. "However, greater tolerance is permitted when addressing a civil or non-criminal statute as opposed to a criminal statute under the void for vagueness doctrine." *Id.* at 716, 791 P.2d at 1295. If "persons of reasonable intelligence can derive core meaning" from a civil statute, it is not unconstitutionally vague. *Id.*

*Doe I*, 138 Idaho at 903, 71 P.3d at 1050.

As stated above, Idaho courts have applied the factors in Idaho Code section 32-717 in guardianship proceedings. Those factors are straightforward, do not use obscure legal terms, and are readily understandable by people of reasonable intelligence. In addition to those factors, this Court has held that "in determining the best interest of the children, the magistrate court could and should consider that it is usually in the best interest of the children to be in the custody of the natural parent(s)." *Doe (2010-15)*, 150 Idaho at 436, 247 P.3d at 663.

The fact that Idaho courts may, as the magistrate court correctly noted, use "any relevant factors" in the best interest test does not mean that the law "leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case."

*Beckles v. United States,* 580 U.S. 256, 266 (2017). To the contrary, the ability to include any relevant factor in the best interest test allows courts—and parties petitioning for guardianship modification or termination—the flexibility to tailor the test to *all* factors that are relevant to the specific needs of a specific child. Fit parents who know the needs of their child or guardians who have significant experience with the child are well-positioned to explain to a court how they can meet those needs. Therefore, we hold that Idaho Code section 15-5-212 and its use of the best interests of the child test is not void for vagueness, and that the statute satisfies rational basis review.

**C. The magistrate court's finding that Alayna is an unfit parent is not clearly erroneous.**

Alayna argues that the magistrate court's finding that she is an unfit parent is clearly erroneous. She argues that the magistrate court erred by: (1) allowing speculative testimony; (2) failing to require the Murrays to meet the clear and convincing standard; (3) failing to terminate the guardianship after Alayna met the conditions in the stipulation; (4) failing to apply the clear and convincing standards to Alayna's fitness as a parent; and (5) failing to give special weight to Alayna's wishes regarding the guardianship.

First, Alayna argues that the magistrate court erred by allowing the Murrays to ask Alayna speculative questions about how she would meet Jane's housing, education, and other needs if the guardianship were terminated. Alayna argues this violates Idaho Rule of Evidence 602 which generally prohibits speculative testimony.

Idaho Rule of Evidence 602 states: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Here, Alayna, as Jane's mother, would and should have personal knowledge about how she *planned* to meet Jane's housing, education, and mental health needs if the guardianship were terminated. Such information, rather than being speculative, would be crucial evidence for a magistrate judge to consider when determining whether terminating the guardianship is in Jane's best interests, as required by Idaho Code section 15-5-212. Therefore, we hold that the magistrate court did not err by requiring Alayna to testify to how she would meet Jane's needs if the guardianship were

terminated.

Second, Alayna argues that the magistrate court erred by concluding that the Murrays could overcome the parental-preference presumption by a preponderance of the evidence, rather than by clear and convincing evidence. Alayna contends that because this Court held in *Nelson* that "[d]ecisions implicating parental rights are subject to a showing of clear and convincing evidence" and "in disputes between a parent and a non-parent, 'Idaho courts apply a presumption that a parent should have custody,'" it follows that the magistrate court should have held the Murrays to the heightened evidentiary standard. *Nelson*, 170 Idaho at 894, 896–97, 517 P.3d at 823, 826–27.

Again, Alayna fails to acknowledge that the *Nelson* decision and its application of the parental-presumption preference was rooted in the undisputed fitness of the parents. "This presumption operates to preclude consideration of the best interests of the child *unless* the nonparent demonstrates either that the parent has abandoned the child, that the parent is unfit or that the child has been in the nonparent's custody for an appreciable period of time." *Nelson*, 170 Idaho at 896–97, 517 P.3d at 825–26 (emphasis in original). And as explained above, appellate courts have concluded that guardianships are governed by the preponderance standard. *See Nicholson*, 166 Idaho at 728–29, 462 P.3d at 1192–93. Thus, we hold that the magistrate court did not err by declining to apply the parental-preference presumption.

Third, Alayna appears to argue that the magistrate court erred by failing to terminate the guardianship after Alayna met the conditions in the stipulation. She says that the magistrate court "moved the goalposts" by giving "too much reliance [to] future contingencies rather than completed objectives set forth in the Judgment." Alayna's miscalculation here is assuming that the conditions in the guardianship stipulation constituted a binding reunification plan. Ostensibly adhering to the stipulation requirements (although Alayna's satisfaction of the conditions of the stipulation has not been established) did not release the magistrate court from its statutory obligation under Idaho Code section 15-5-212 to evaluate whether terminating or modifying the guardianship would be in the best interests of the child. *Pottenger v. Charlton*, 172 Idaho 154, ____, 530 P.3d 701, 709 (2023) (recognizing that compliance with an original custody order is not dispositive in a modification proceeding analyzing the best interests of the child). We hold that the magistrate court did not err by declining to terminate the guardianship based on Alayna's alleged

22

completion of the conditions in the stipulation, rather than the best interest of the child.

Fourth, Alayna argues that the magistrate court erred by finding that Alayna is an unfit parent under the preponderance standard, and that record does not support a conclusion that Alayna would not be able to provide for Jane's mental and emotional needs. Having already addressed the legal reasoning for the preponderance standard in guardianships, we will not repeat it here. Contrary to Alayna's assertion, the magistrate court's findings of fact point to many instances of the record supporting its ultimate conclusion.

For example, the magistrate court found that the family counselor reported that "Alayna yelled at times during the counseling—her voice was raised and her emotions were elevated; and at times this was directed at Jane." The magistrate court noted that the family counselor reported that "Alayna had difficulty learning that she needed to find a way to invite positive interaction from Jane and not to invite negative interaction," and that "Alayna would sometimes make an apology [to Jane], but couch it as an accusation, so that it didn't come across as an apology to Jane and it didn't invite a healthy response from Jane." The magistrate court found that the family counselor reported that "it appeared Alayna was trying to catch Jane or set her up to say something that Alayna could use against the Murrays or Jane in court," and that the counselor said the sessions between Alayna and Jane ended because "[t]he interactions weren't positive and it was making things harder, not better, for Alayna's and Jane's relationship." Further, the magistrate court announced from the bench that "[a]lthough there's certainly not a requirement at this point to show that [the guardians have overcome the presumption of parental fitness] by clear and convincing evidence, the evidence is clear and convincing. In my mind it's far beyond preponderance." We hold that the magistrate court did not err in concluding that Alayna is an unfit parent.

Fifth, Alayna attempts to argue that the magistrate court's decision not to terminate the guardianship failed to afford Alayna the "special weight" due parents in determining a child's best interests. *See Overholser v. Overholser*, 164 Idaho 503, 508, 432 P.3d 52, 57 (2018). As she does repeatedly throughout her brief, Alayna's selective quotes fail to acknowledge that doctrines emphasizing deference to parental wishes, including the "special weight" rule, hinge on the assumption that the parent is fit. As this Court explained in *Overholser*:

> In examining whether a state statute infringes on parental rights to manage the care, custody, and control of their children, a court should narrowly construe nonparental custody and visitation statutes, as well as afford the parents' wishes and decisions "special weight" in determining the child's best interests. [citation omitted]. *After*

23

*all, there is "the traditional presumption that a fit parent will act in the best interest of his or her child."* [Citation omitted.]

*Overholser*, 164 Idaho at 508, 432 P.3d at 57 (emphasis added). Again, this holding is couched in terms of *fit* parents, but that paradigm does not fit Alayna's circumstance here. Therefore, we hold that the magistrate court did not err by not affording Alayna's wishes the "special weight" typically allowed fit parents in determining a child's best interests. For these reasons, we hold that the magistrate court's finding that Alaya is an unfit parent is not clearly erroneous.

### D. The Murrays' actions constituting parental alienation do not warrant dismissal of the guardianship.

Alayna's final argument is that this Court's prior cases support terminating the guardianship because the Murrays' alienating activity demonstrates the urgent need to intervene and re-establish the parent-child relationship. Alayna correctly argues that this Court has held that "the acts and conduct of the custodial parent, resulting in the alienation of the love and affection which children naturally have for the other parent, is a vital and very serious detriment to the welfare of such children and is grounds for modification of the decree with respect to such custody." *Woods v. Woods*, 163 Idaho 904, 908, 422 P.3d 1110, 1114 (2018) (quoting *McGriff v. McGriff*, 140 Idaho 642, 652, 99 P.3d 111, 121 (2004)). "This same rule carries equal weight when applied to any other individual who could potentially play an influential part in the development of the children and their relationship with the other parent." *McGriff*, 140 Idaho at 652, 99 P.3d at 121.

But Alayna's characterization of the evidentiary record regarding the Murrays' efforts to alienate Jane from Alayna is incomplete. Alayna accurately claims that the Murrays—particularly Teena—engaged in some behavior intended to alienate Jane from Alayna. This included, but was not limited to, Teena making disparaging comments about Alayna to Jane, using Alayna's mugshot as the screensaver on Teena's phone, and sharing details of the guardianship litigation with Jane, including that Alayna filed a motion to hold the Murrays in contempt. Alayna fails to acknowledge, however, that the magistrate court found that after Jane's Guardian Ad Litem ("GAL") instructed the Murrays not to say negative things about Alayna in or near Jane's presence, the GAL reported that "Teena was receptive to . . . [that] suggestion . . . and [the GAL] felt that the Murrays made a good faith effort after that and did better in not exposing Jane to negative information." Indeed, the evidence shows that the Murrays corrected their previous behavior by not making disparaging comments about Alayna, ensuring Alayna's phone number was posted on Jane's mirror and

24

replacing it when Jane removed it, telling Jane that Alayna loved her and encouraging her to call Alayna, keeping positive pictures of Alayna around their house and commenting on Alayna's good attributes to Jane.

Alayna contends that there is an urgent need for this Court to terminate the guardianship to end the alienation and "begin the process of healing the fractures within this parent-child relationship." Yet the magistrate court's findings of fact state that the GAL "concluded that Jane's negative perceptions of Alayna were based primarily on Jane's own experiences with Alayna or memories of those experiences, along with Jane's experiences with Alayna in counseling, but that Teena's negative comments and behaviors also played a part." The Murrays point out that because Jane is seventeen years old (now nearly eighteen years old), her preference to remain in their custody should be given strong deference. Because the magistrate court found that the Murrays' alienating behavior had stopped, Jane's negative perception of Alayna was based primarily on her own experiences, and Jane's preference was to remain in the Murrays' care, there are not grounds to terminate the guardianship. Thus, we affirm the magistrate court's decision.

## V. CONCLUSION

We hold that: (1) the Idaho Parental Rights Act does not apply to guardianships brought by private parties; (2A) Alayna waived her right to challenge Idaho Code sections 15-5-204 and 15-5-207; (2B) Idaho Code sections 15-5-209 and 15-5-212 are constitutional; (3) the magistrate court's finding that Alayna is an unfit parent was not clearly erroneous; and (4) the magistrate court did not make an erroneous finding that the Murrays' actions constituting parental alienation did not warrant termination of the guardianship. Therefore, we affirm the magistrate court's decision.

JUSTICES MOELLER and MEYER concur.

ZAHN, Justice, concurring in the result.

While I fully concur in the result reached by the majority, I do not concur in parts of the majority's analysis. I only concur in the result of sections IV.A., IV.B.1 and most of section IV.B.2. Specifically, I would hold that the Idaho Parental Rights Act applies to Idaho Code sections 15-5-209 and 15-5-212 because they are the result of state legislative action that restricts or interferes with a parent's fundamental rights relative to their children. I also disagree that rational basis should be applied to the statutes in question because I do not believe that Alayna A. Dalton has raised a due process or equal protection claim under the United States Constitution. However, I do

agree that she has raised a "void for vagueness" constitutional challenge concerning the best interests of the child standard and concur fully in the majority's analysis of that issue. I also fully concur in sections IV.C and IV.D of the majority opinion, which conclude that the magistrate court's finding that Alayna was not a fit parent is supported by substantial and competent evidence and that the Murrays' actions did not warrant dismissal of the guardianship.

Despite my dissent from portions of the majority's analysis, I concur in the result reached by the majority because I would hold that sections 15-5-209 and 15-5-212 survive strict scrutiny review under the Idaho Parental Rights Act as applied to Alayna given the magistrate court's finding that she was not a fit parent.

### A. The statutes at issue are the result of state action that restricts or interferes with fundamental parental rights and are therefore subject to strict scrutiny under the Idaho Parental Rights Act.

Idaho's Parental Rights Act ("the Act") provides that parents who have legal custody of children have the fundamental right to make decisions concerning their care, custody, and control, including the right to make decisions concerning the child's education. I.C. §§ 32-1011, 32-1012. The Act prohibits the State of Idaho from violating a parent's fundamental rights or otherwise restricting or interfering with those rights unless the State demonstrates, by clear and convincing evidence, that the restriction or interference is both essential to further a compelling governmental interest and is the least restrictive means available for furthering the compelling interest. I.C. § 32-1013(1). While the Act was passed in 2015, it applies to any interference "now existing or hereafter enacted." I.C. § 32-1013(2); *see generally* Idaho Parental Rights Act, ch. 219, 2015 Idaho Sess. Laws 680–82 (codified as amended at I.C. §§ 32-1010 to 32-1015).

Idaho's guardianship statutes provide a process for a nonparent to assume custody of a child, thus restricting or interfering with the fundamental parental rights of her parents. *See* I.C. §§ 15-5-204, 15-5-206, 15-5-207. "The appointment of guardians for unmarried minor children in Idaho is governed by statute." *Heiss v. Conti (In re Doe)*, 148 Idaho 432, 438, 224 P.3d 499, 505 (2009). This Court previously recognized that a guardianship imposes limitations on parental rights by granting a nonparent the right to make decisions concerning the care, custody, and control of a child. *Bond v. Round (In re Guardianship of Doe)*, 157 Idaho 750, 756, 339 P.3d 1154, 1160 (2014). Idaho law grants the guardian of a minor "the powers and responsibilities of a parent who has not been deprived of custody of his minor and unemancipated child . . . ." I.C. § 15-5-209.

"Until the guardianship is terminated, the guardian's right to custody of the minor is superior to that of the minor's parent." *Bond*, 157 Idaho at 756, 339 P.2d at 1160 (quoting *Doe II v. Doe III* (*In re Doe I*), 145 Idaho 337, 340, 179 P.3d 300, 303 (2008)).

Idaho's guardianship statutes "restrict or interfere with" a parent's fundamental rights protected by the Act. Through these statutes, the State created a legal pathway for a nonparent to assume custody over a minor and exercise the powers and responsibilities of a parent. *See* I.C. §§ 15-5-201 through 15-5-213. Absent the State of Idaho's enactment of these statutes, a private party would not have the legal right to assume legal authority over a parent's child. The State's passage of these guardianship statutes therefore constitutes state action that restricts and interferes with the fundamental rights protected by the Act and, as a result, the guardianship statutes are subject to strict scrutiny review under the Act.

The majority concludes that the Act does not apply because the guardianship proceeding was initiated by private parties. In other words, because the State did not directly institute the guardianship proceeding, there was no state action for purposes of the Act. In reaching this conclusion, the majority relies in part on the Idaho Court of Appeals' decision in *Nicholson v. Bennett* (*In re Guardianship of Doe*), 166 Idaho 720, 462 P.3d 1184 (Ct. App. 2020). However, it appears that case dealt with a different argument and is therefore distinguishable from the issue raised in this case.

*Nicholson* involved a mother's challenge to a private party guardianship on the basis that the magistrate court should have applied the Act rather than Idaho's guardianship statutes when adjudicating the guardianship petition:

> According to Bennett, the guardianship *proceedings* were a State action that implicated her fundamental right to parent, and thus, the magistrate court failed to consider whether the proceedings were established by clear and convincing evidence and whether the guardianship was the least restrictive means to further a compelling state interest.

*Id.* at 724, 462 P.3d at 1188 (emphasis added). The Court of Appeals noted that the guardianship action was brought by paternal relatives of the minor child. *Id.* at 724–25, 462 P.3d at 1188–89. The court concluded that the Act did not apply to the proceedings because the State did not seek to deprive the mother of her fundamental rights:

> The plain language of the statute applies only to "the state of Idaho" and "any political subdivision thereof." Here, unlike a termination case in which the [S]tate of Idaho initiates an action, the Nicholsons were the petitioners in this case. The

27

Nicholsons are not the State or a political subdivision of the State. . . . Because this case does not involve a State action, I.C. § 32-1013 does not apply, as Bennett argues on appeal.

*Id.*

*Nicholson*, however, is distinguishable because Alayna asserts a different argument than the one advanced there. In *Nicholson*, the mother argued the *proceedings* were subject to the Act. Here, Alayna argues that the guardianship *statutes* themselves are subject to strict scrutiny review under the Act because the State created a legal process for nonparents to restrict or interfere with her fundamental parental rights protected by the Act. The Court of Appeals' decision in *Nicholson* did not address the question that Alayna raises here, and the *Nicholson* decision therefore provides no support for the majority's conclusion.

Nor does this Court's decision in *Nelson v. Evans* support the majority's conclusion that the Act does not apply in this instance. 170 Idaho 887, 517 P.3d 816 (2022). In *Nelson*, grandparents filed a petition for visitation pursuant to Idaho's grandparent's visitation statute, I.C. § 32-719, seeking a court order allowing them to visit their grandchildren over the objection of the children's parents. *Id.* at 890–92, 517 P.3d at 819–21. We concluded that the grandparent visitation statute interfered with or restricted fundamental parental rights protected by the Act and was therefore subject to strict scrutiny:

> It is well established that "[p]arents have a fundamental right to maintain a familial relationship, and to the 'custody, care and control' of their children; this right is protected by the Fourteenth Amendment." *Because Idaho Code section 32-719 seemingly allows grandparents to seek visitation over the objection of fit parents, the fundamental right to parent is implicated. It is undisputed by the parties that strict scrutiny applies.* Moreover, Idaho Code section 32-1013 mandates that any law restricting or interfering with the fundamental right to parent satisfy strict scrutiny: such laws are presumed invalid unless they are both (1) "essential to further a compelling government interest," and (2) "the least restrictive means available for the furthering of that compelling government interest." I.C. § 32-1013(1)(a)–(b).

*Id.* at 899, 517 P.3d at 828 (emphasis added) (first citation omitted).

The majority relies on the reference to "fit parents" in the above quoted language to conclude that "*Nelson* held that the grandparent visitation statute must survive strict scrutiny because it infringed on the rights of fit parents." However, when this language from *Nelson* is read in context with the sentence before it, it is clear that the quoted language concerns the fundamental right to parent under the Fourteenth Amendment of the United States Constitution, not the

28

fundamental rights protected by the Act. *See Nelson*, 170 Idaho at 899, 517 P.3d at 828. Because the cited language discusses fundamental parental rights under the United States Constitution rather than the Act, our holding in *Nelson* provides no support for the majority's conclusion in this case.

Instead, our holding in *Nelson* compels the opposite conclusion: that any law that interferes with or restricts the fundamental rights protected by the Act must satisfy strict scrutiny. Our holding in *Nelson* did not limit application of the Act to fit parents. Nor could it, because the Act contains no such limitation:

> (1) Neither the state of Idaho, nor any political subdivision thereof, may violate a parent's fundamental and established rights protected by this act, and any restriction of or interference with such rights shall not be upheld unless it demonstrates by clear and convincing evidence that the restriction or interference is both:
>
> (a) Essential to further a compelling governmental interest; and
>
> (b) The least restrictive means available for the furthering of that compelling governmental interest.

I.C. § 32-1013(1)(a)–(b). The Act applies to *any* restriction of, or interference with, rights protected by the Act. Its application is not limited to "fit parents" and therefore it applies to all parents, including Alayna. "We cannot add by judicial interpretation words that are not found in the statute as written." *City of Huetter v. Keene*, 150 Idaho 13, 15, 244 P.3d 157, 159 (2010).

To summarize, the Act protects a parent's fundamental right to make decisions concerning their children's care, custody, control, and education. I.C. §§ 32-1011, 32-1012. Idaho's guardianship statutes permit a nonparent to pursue a court order that, if granted, permits the nonparent to exercise "the powers and responsibilities of a parent who has not been deprived of custody of his minor and unemancipated child . . . ." I.C. § 15-5-209. During the pendency of the guardianship, "the guardian's right to custody of the minor is superior to that of the minor's parent." *Bond*, 157 Idaho at 756, 339 P.3d at 1160 (quoting *Doe II*, 145 Idaho at 340, 179 P.3d at 303). The Idaho Legislature enacted the guardianship statutes, and therefore the State has created a statutory scheme that restricts or interferes with the fundamental rights protected by the Act. Thus, the guardianship laws are subject to strict scrutiny under the Act.

**B. Idaho's guardianship statutes satisfy strict scrutiny under the Act.**

While I disagree with the majority's conclusion that the Act does not apply here, I ultimately concur in the result reached because, as applied to Alayna, the guardianship statutes at

issue are essential to furthering a compelling governmental interest and are the least restrictive means available for furthering that compelling governmental interest.

As I noted in the opening paragraph of this opinion, I fully concur in the remainder of the majority's analysis. I agree that Alayna waived her right to challenge Idaho Code sections 15-5-204 and 15-5-207. As a result, the remaining statutes subject to strict scrutiny analysis in this appeal are Idaho Code sections 15-5-209 and 15-5-212. Further, I agree with the majority's holding that the magistrate court's finding that Alayna was an unfit parent is supported by substantial and competent evidence. I therefore approach the strict scrutiny analysis with these holdings in mind.

Idaho Code section 15-5-209 concerns the powers and duties of a guardian of a minor. Alayna argues that this section does not satisfy strict scrutiny because (1) it does not provide courts with authority to customize the powers provided to the guardian and the powers retained by the parents, and (2) it fails to demand a duty to preserve the parent-child relationship. Idaho Code section 15-5-212 concerns the procedures for resignation or removal of a guardian and the modification or termination of a guardianship. Alayna contends that this statute fails to satisfy strict scrutiny because it lacks a harm standard and therefore fails to further a compelling governmental interest and is not narrowly tailored. Alayna's arguments are not persuasive.

The first prong of the Act's strict scrutiny inquiry examines whether the statutes are essential to further a compelling governmental interest. I.C. § 32-1013(1)(a). The State has a "compelling governmental interest in the protection of children, particularly where the children need to be protected from their own parents." *State, Dep't of Health & Welfare v. Doe (2024-04)*, ___ Idaho ___, ___, 555 P.3d 1091, 1104–05 (2024) (quoting *Kottmyer v. Maas*, 436 F.3d 684, 690 (6th Cir. 2006)). Idaho Code sections 15-5-209 and 15-5-212 apply to existing guardianships. In this case, Alayna consented to the guardianship and later moved to terminate the guardianship. The magistrate court denied her motion after finding that Alayna was an unfit parent because of her inability or unwillingness to meet her daughter's mental and emotional needs, as well as some of her educational needs. In this instance, maintaining the guardianship, including maintaining the guardian's powers and duties, ensured that Alayna's daughter's mental, emotional, and educational needs would be met, which in turn was essential to furthering the State's compelling interest in protecting Alayna's daughter.

The second prong of the Act's strict scrutiny inquiry examines whether the restriction or interference imposed is the least restrictive means available for the furthering of that compelling

interest. Given the magistrate court's finding that Alayna was unfit, the continuation of the guardianship and the transfer of parental powers and duties to the guardians were the least restrictive means available to protect Alayna's daughter. For the reasons articulated by the magistrate court, Alayna was unable or unwilling to meet her daughter's mental and emotional needs, as well as some of her educational needs. Given Alayna's inability to meet those needs, maintaining the guardianship was the least restrictive means to ensure the child's needs were met.

For similar reasons, the powers and duties granted to the guardian in section 15-5-209 were the least restrictive means to ensure the child's needs were met. Alayna's argument that section 15-5-209 fails to provide the court with authority to customize the parental rights afforded to the guardian ignores section 15-5-212, which permits a court to modify a guardianship. The court therefore has the legal authority to customize the guardian's powers and duties. With regard to her argument that section 15-5-209 does not mandate that the parent-child relationship be maintained, Alayna has failed to establish that it was in her daughter's best interest to maintain the parental relationship when Alayna petitioned to terminate the guardianship. The magistrate court found that Alayna's behavior during visits hurt her daughter emotionally, increased conflict between them, and was not healthy. Given these findings, the powers and duties granted to the guardian in section 15-5-209 were the least restrictive means of ensuring that the child's needs were met.

For the reasons discussed above, as applied to Alayna, Idaho Code sections 15-5-209 and 15-5-212 are both essential to further a compelling governmental interest, and the least restrictive means available for furthering that compelling governmental interest. For this reason, I concur only in the results of section IV.A of the majority opinion. I fully concur in the remainder of the opinion.

### C. Alayna has not argued that the guardianship statutes fail strict scrutiny review under either the United States Constitution or the Idaho Constitution.

I do not concur in a significant portion of section IV.B of the majority opinion, in which it applies rational basis review to two guardianship statutes. The majority fails to specify the basis for applying rational basis review. Alayna does not argue that either statute fails to comply with strict scrutiny review under either the United States or Idaho constitutions, so I can find no basis for the majority's application of rational basis review. I do not join these parts of the majority's analysis because they analyze claims that have not been made.

31

Alayna's opening brief on appeal contains the required argument section. *See* I.A.R. 35(a)(6). Section I of the argument section begins with a heading which asserts that the guardianship statute fails strict scrutiny review. Subsection A of section I argues that strict scrutiny review applies because of the Act. At no point, however, does Alayna assert that the guardianship statutes are unconstitutional under either the United States or Idaho Constitutions. I acknowledge that her brief contains statements that the statutes are presumed unconstitutional, but she never specifies the constitutional provisions that are violated. Her briefing on appeal contains a single citation to the United States Constitution and a single citation to the Idaho Constitution, both of which are made in support of her argument that the best interests of the child standard is unconstitutionally vague.

We will not consider issues that lack citations to supporting legal authority. *See Kelly v. Kelly*, 171 Idaho 27, 45, 518 P.3d 326, 344 (2022). Alayna failed to properly raise or support a separate constitutional challenge arguing for strict scrutiny review of the guardianship statutes and I therefore would not address the issue. However, even if Alayna raised and properly supported these constitutional challenges, I still would not agree with the majority's analysis because rational basis is not the appropriate level of constitutional review. The Fourteenth Amendment of the United States Constitution provides heightened protection against government interference with certain fundamental rights and liberty interests, including the right of parents to make decisions regarding the care, custody, and control of their children. *See Doe I v. Doe II (2022-06)* (*In re Doe*), 170 Idaho 901, 907, 517 P.3d 830, 836 (2022) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). Strict scrutiny review applies to statutes that infringe on a fundamental right. *BABE VOTE v. McGrane*, 173 Idaho 608, ___, 546 P.3d 694, 708 (2024). For the reasons stated above, I would conclude that the guardianship statutes also satisfy strict scrutiny review under the United States and Idaho Constitutions.

JUSTICE BRODY concurs.